UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

CRIM. CASE NO. 13-20579

v.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

MICHAEL GENE DePRIEST,

Defendant.
_______________________________/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS FRUITS OF ILLEGAL SEARCH AND SEIZURE**

On September 27, 2013, Defendant filed a Motion to Suppress. On October 18, 2013, the United States filed a Response. The Court subsequently heard oral argument.

The Court concludes that Defendant's Motion to Suppress is DENIED for the reasons that follow.

BACKGROUND

On May 22, 2013, U.S. Magistrate Judge Laurie Michelson signed a search warrant for Defendant DePriest's residence in Redford, Michigan.

The affidavit submitted to the Magistrate Judge by ATF Special Agent Michael DeVantier stated in pertinent part:

1. That he was investigating Derrick Darnell Gills and a person matching the physical description of Michael Gene DePriest.

2. That ATF-1, a reliable and credible informant, stated that "Rick", who drove a silver car, was distributing heroin in Detroit.

3. That "Rick" was identified by ATF agents and ATF-1 as Derrick Darnell Gills.

4. That in 2009, DePriest had pled guilty to manufacturing/ distributing prescription forms, and had been arrested by DEA Detroit in 2011 for possession of heroin, and that he lived on Dixie road in Redford, Michigan.

5. That ATF-1 had purchased heroin from Gill in Detroit on three occasions in May 2013; the 7th, 9th and 13th. All three were controlled purchases where ATF agents searched him prior to the deal, gave him control funds for the purchase, and seized the heroin from him right after the deal.

6. That on May 15, 2013, when ATF-1 called Gills to arrange a heroin purchase, Gills said "I got to go put it together," before the deal could occur.

7. That the affiant ATF agent, based on his training and experience recognized "this statement by Gills is slang for needing to obtain the narcotics." Affidavit ¶ 19.

8. That surveillance of Gills saw him, post-call, leave his house on Marlowe Street in Detroit, in a silver Toyota, drive to Defendant DePriest's house in Redford, Michigan, meet with DePriest in

Gills' car, and then drive to Detroit and do the heroin deal with ATF-1.

9. On May 21, 2013, ATF called Gills to do another purchase of heroin. ATF surveillance at DePriest's house saw DePriest, post-call, drive to a Farmington, Michigan address, pick up an unidentified male, then drive to a shopping plaza on Orchard Lake Road north of Maple and enter the Michigan Secretary of State Office. Agents then saw Gills arrive at that location in a silver Toyota and meet with DePriest. Thereafter, the unidentified male who had come to the plaza with DePriest, left with Gills who dropped him off at the unidentified male's house in Farmington, on Gills' way to Detroit to met with ATF-1 and consummate the heroin deal.

10. The affiant also stated that based on his training and experience, he knows that drug dealers often store narcotics in their homes to protect the drugs from "other drug dealers, and to hamper the activities of law enforcement." ¶ 27.

<u>FACTUAL ANALYSIS</u>

The evidence establishes that after being called by ATF-1 for a drug purchase on May 15, 2013, Gills stated: "I got to go put it together." This evidences that the drugs were not then in his possession to do the deal. Gills then went to DePriest's house, met with him, and then drove to Detroit to do the deal. Gills did not drive to any other location or meet with any other

individual, from the original ATF-1 phone call seeking drugs, until the sale to Gill.

A similar situation occurred on May 21, 2013, after Gills received a phone call from ATF-1 seeking drugs. A phone call to Gills, him meeting with DePriest, and then the sale to ATF-1. The only significant difference was that Defendant DePriest picked up an unidentified male in Farmington on the way to the Secretary of State office, and Gills dropped him off at his Farmington house on the way to Detroit to do the deal.

Thus, the facts in the affidavit established that on two occasions, May 15th and May 21, 2013, after Derrick Gills was contacted by ATF-1 who wanted to purchase heroin, Gills traveled to meet with Defendant DePriest on the way to the transaction. That DePriest picked up an unidentified male on the way to the meeting at the Secretary of State office is a collateral fact; Gills responded to ATF-1's calls by immediately meeting with DePriest and then do the drug deals with ATF-1.

The legal standard to support a search warrant against a claim of a Fourth Amendment violation, is probable cause to believe there are fruits of a crime at that address. In this case, the Court concludes that this standard has been satisfied. The facts support probable cause to believe that Defendant DePriest had heroin at his house, and that Gills had come by DePriest's house and/or met DePriest on the two occasions immediately after the calls to get the drugs, after the drug deal was set up by ATF-1.

LEGAL ANALYSIS

The Court does not base its decision only on the fact that Gills met with DePriest on two occasions. Mere companionship with another individual does not satisfy the probable cause standard. *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005). But here, the facts that

initiated DePriest's two meetings with Gills, and the facts that occurred after the meeting, signaled probable cause, loud and clear, that this was not mere companionship, but instead was a conspiracy to sell drugs. Both meetings occurred after Gills had agreed to do a drug deal. On the May 15th deal, after ATF-1's call, Gills said: "I got to go put the deal together." Affidavit ¶ 19. A commonsense understanding of this phrase, in the context of ATF-1's call to purchase heroin, and Defendant's stated inability to immediately bring the drugs to Detroit, is Gill's need to get the drugs. And it is also a commonsense conclusion that the drugs were to be provided by DePriest, the only person Gills met with after the ATF-1 calls, and prior to consummating the deals to sell heroin.

Accordingly, the Court concludes that the affiant ATF agent could fairly conclude that DePriest was a conspirator supplier of Gills in the drug deals, and that there was probable cause that contraband would be found in DePriest's house. See *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Finally, even if the facts did not establish probable cause, the exclusionary rule should not be applied in this case. As the Sixth Circuit held in *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010), citing the Supreme Court decision in *Herring v. United States*, 129 S.Ct. 695, 700-02 (2009):

> [T]he *Herring* Court's emphasis seems weighed more toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct, unless the officers engage in "deliberate, reckless, or grossly negligent conduct."

The Court concludes that the ATF agents in this case did not engage in such deliberate, reckless, or grossly negligent conduct, even if probable cause was not established.

Accordingly, Defendant's Motion to Suppress is DENIED.

SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: January 2, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 2, 2014.

s/Deborah Tofil
Case Manager